Commonwealth ex rel. Saul, Appellant, *v.* Saul.

Argued March 19, 1954. Before HIRT, ROSS, GUN-THER, WRIGHT, WOODSIDE and ERVIN, JJ.

*John Patrick Walsh,* with him *Leon Rosenfield,* for appellant.

*J. Dennis Sheedy*, with him *David H. Roberts*, for appellee.

OPINION BY WOODSIDE, J., July 13, 1954:

This comes before us on appeal from the Municipal Court of Philadelphia reducing an order of support from $90 per week to $75 per week. The original order was made by the late Judge LINTON October 30, 1951, for the support of the relatrix and two minor children. No appeal was taken from this order.

October 17, 1952 defendant filed a petition to reduce the order; March 11, 1953 relatrix filed a petition to increase; and August 10, 1953, defendant filed a subsequent petition to reduce. After hearing President Judge HAZEL BROWN dismissed the petition to increase the order, and acting upon the petition to decrease, reduced the order from $90 to $75 a week. She was in the unfortunate position of having no way of knowing how the late Judge LINTON evaluated the testimony taken when the original order was made.

Prior to their separation on July 10, 1951, the defendant was employed in his father's drug store as a registered pharmacist and in a physician's supply business in which he was manager and principal salesman. This business was in the defendant's name but the defendant and his father claim it was the father's business.

The parties lived well. They lived in a nice home in a pleasant neighborhood; had horses and the use of automobiles. The daughter went to private school. The defendant had a substantial sum in cash and securities. The exact salary he received is difficult to determine but it appears that his gross salary was close to $300 per week, made up of $100 a week in cash for household expenses, $100 a week by check for the purpose of investing in securities, $40 in cash for personal use, the pay-

ment of all income, wage and other taxes imposed on the above, and the payment of certain other expenses.

Upon the separation of the parties the defendant, although admitting liability for the support of both wife and children, made every effort to avoid the payment of a just sum by divesting himself of both income and assets. Defendant's father joined him in a brazen and disgusting series of maneuvers to minimize the amount of money the relatrix and the children could be awarded. The father "fired" the defendant from the business, which is operated under defendant's name, and rehired him at $100 per week instead of the approximate $300 a week he had previously been receiving.

Every effort was also made to substantially reduce the defendant's assets. The money which the father "paid" or "gave" to the defendant was returned to the father. Just before the separation of the parties a $20,-000 mortgage was placed by the defendant on the home in which the parties lived. After an action brought by relatrix alleging fraud the mortgage was satisfied. The effort to defeat the rights of the relatrix, and even more important the defendant's own children, was continuous—both before and after the original hearing.

The relatrix is now 39 years of age, the daughter 12, and the son 6. She devotes all her time to the children and is not employed. She is living in a small second floor apartment and has had no income except that which she received from the defendant by virtue of the court order.

The evidence at the original hearing showed defendant to have assets in excess of $120,000. In spite of his financial condition he became $2760 in arrears which he did not pay until Judge O'Donnell sentenced him to three months in the House of Correction.

Defendant who is now 40 years of age suffered a heart attack September 9, 1952. He was in the hospital

a month and disabled for some months thereafter, but we think the evidence establishes that his earning capacity at the time of the last hearing was not substantially reduced from the time when the parties were living together. Although he contended he was too ill to sell drugs, he was not too ill to ride horseback.

Evidence concerning defendant's financial status was presented by an accountant who obtained a large part of his information from others who failed or refused to testify. Much of his testimony was therefore hearsay. What evidence there was, indicated an effort on the part of the defendant and his father to juggle accounts so that defendant's apparent assets would be substantially reduced. There can be no doubt this was done for the purpose of reducing the amount upon which an order could be based. We might spend considerable time in relating details to demonstrate this but we think that to do so would serve no useful purpose.

We are unanimously of the opinion that the court would have been justified in making the original order more than $90 per week, but there having been no appeal from that order and we, being of the opinion that the evidence taken at the hearings to increase the order does not show an improved earning power or increased assets, are not warranted in disturbing the dismissal of that petition by the lower court.

We are of the opinion, however, that all the evidence taken together does not warrant the reduction from $90 per week to $75 per week. The evidence shows beyond any doubt, that the defendant has played fast and loose not only with his children and his wife, but also with the Court.

We recognize that it is within the discretion of the lower court to determine the amount a husband should pay for the support of his wife and children, and unless there is an abuse of that discretion we will not under-

take to modify or reverse such order. *Comm. ex rel. Shotz v. Shotz,* 130 Pa. Super. Ct. 561, 198 A. 472 (1938) ; *Comm. ex rel. Schoenfeldt v. Schoenfeldt,* 149 Pa. Super. Ct. 455, 27 A. 2d 472 (1942) ; *Comm. ex rel. Barnes v. Barnes,* 151 Pa. Super. Ct. 202, 30 A. 2d 437 (1943).

The court should not close its eyes to the evident lack of good faith on the part of the defendant. We have here a man who spends $12,000 on repairs to his luxurious home, rides horses, drives cars, pays $50,000 for life insurance policies in which his wife and children are given no interest, and who refuses to put forth any effort in a business being operated under his name after the physicians say he is physically able to do so. And all this while his children and his wife walk up the stairs to a small second floor apartment and give up the standard of living to which he had accustomed them in a happier day, and which he continues to maintain for himself today.

With the aid of his father his earnings were reduced, but not his earning power. His assets were reduced, but by giving them away in a way that would warrant the conclusion he did it to avoid his obligation to adequately support his wife and children. Under such circumstances the lower court should not have given the weight it did to his decreased assets and earnings.

The order dismissing the petition to increase the original support order is affirmed.

The order reducing the original support order from $90 per week to $75 per week for the support of the wife and two children is reversed and the order of $90 per week is reinstated. Costs to be paid by appellee.