## Commonwealth ex rel. Maceroyal v. Cunningham

*George J. Joseph*, District Attorney, for petitioner. *James C. Lanshe*, for respondent.

SCHEIRER, J., May 15, 1962.—Petitioner, 67 years of age and an indigent person, has petitioned this court for an order of support against her 47 year old son under the Support Law of June 24, 1937, P. L. 2045, sec. 3, 62 PS §1973, as amended August 22, 1961, P. L. 1029, 62 PS §1973 P.P. This section provides as follows:

"(a) The husband, wife, child, (except as hereinafter provided), father and mother of every indigent person, whether a public charge or not, shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides shall order or direct. No child shall be liable for the support of any parent who abandoned the child and persisted in the abandonment for a period of ten years during the child's minority . . .

"(b) The courts shall have power to hear, determine and make orders and decrees in such cases upon the petition of such indigent person or of any other person or any public body or public agency having any interest in the care, maintenance or assistance of such indigent person."

From the testimony, we make the following

*Findings of Fact*

1. Petitioner is Beatrice A. Maceroyal, 67 years of age, who resides at the College Hotel, 127 North Fourth Street, Allentown, Pennsylvania.

2. Defendant is Earl Cunningham, 47 years of age, who resides at Route No. 3, Allentown, Pennsylvania, and is the son of petitioner.

3. Petitioner is presently receiving aid from the Department of Public Welfare of the Commonwealth of Pennsylvania in the amount of $40.10 every two weeks.

4. Defendant was reared in the home of Alice Bogert, his maternal grandmother, from the time of his birth to the time of his emancipation at the age of 18.

5. Defendant was born out of wedlock.

6. Petitioner is separated but not divorced from her husband, whom she married five or six years after defendant was born. The parties lived together for five or six years.

7. Defendant is divorced and supports himself and a 22 year old son, who is incapacitated, out of the earnings of the bus company which he owns.

8. Defendant is the owner of the Allentown Suburban Bus Line which is engaged in transit and school transportation.

9. Defendant's 1960 income tax return reflects a loss of $3,142.45 and the taking of depreciation in the amount of $12,000. The business of defendant was operated at a loss in 1961 to the date of the hearing.

10. Defendant's 1960 income tax return shows a payroll expense of $38,000. Defendant takes his living expenses out of business income.

11. Defendant's trailer and automobile are encumbered and defendant is indebted to The First National Bank of Allentown in the amount of $17,000. The buses of defendant are encumbered in an undesignated amount and personal property such as office furniture and tools are subject to a chattel mortgage.

12. Defendant has no assets other than above mentioned.

13. During the period of the petitioner's marriage, she visited the home of her mother occasionally and there saw defendant.

14. Defendant was granted a private detective's license in 1961 which business is operating at a loss.

15. Petitioner gave her mother sums of money for petitioner's room and board during the period that defendant resided with his grandmother but at indefinite times and in uncertain amounts.

16. The longest period of time petitioner was absent and away from defendant before he arrived at the age of 18 was two or three years. There were other times when petitioner was away from defendant for several months.

17. Defendant remained with his grandmother by

the mutual agreement of petitioner and the grandmother.

18. The grandmother considered defendant to be her boy and accordingly made no demands for his support or maintenance from petitioner.

## Discussion

Petitioner, 67 years of age, receives aid from the Department of Welfare and has no other income, thus may be considered an indigent person under the Support Law above cited. Two questions remain to be determined in this proceeding. The first is whether defendant has brought himself within the terms of the statute proving that petitioner abandoned him for a period of ten years during his minority. If he is successful in such proof, he will be free from any obligation to support petitioner.

Neither counsel nor we have been able to find any cases interpreting the abandonment provision other than the case of Commonwealth v. Stoudt, 51 Berks 99. The court's pertinent observation is as follows:

"The Supreme Court of Pennsylvania in Harvey Adoption Case, 375 Pa. 1, 6, stated 'Abandonment has been defined in the authorities as importing any conduct on the part of the parent which evidences a settled purpose to forego all parental duties and relinquishes all parental claim to the child.' Schwab Adoption Case, 355 Pa. 534, 538, 50 A. 2d 504, 506, 507; Southard Adoption Case, 358 Pa. 386, 391, 57 A. 2d 904, 906; Susko Adoption Case, 363 Pa. 78, 82, 69 A. 2d 132, 135. For a mother to abandon her child means to give it up absolutely with the intent of never again claiming her right to it. Mere neglect does not necessarily constitute abandonment; ordinarily, to have that effect, it must be coupled with affirmative acts or declarations on her part indicating a positive intention to abandon. Abandonment may therefore be affected, sometimes by a

mere formal legal instrument, sometimes by a course of conduct. It is a matter of intention, to be ascertained by what the parent says and does, viewed in the light of the particular circumstances of the case: Hazuka's Case, 345 Pa. 432, 435, 29 A. 2d 88, 89.

"Abandonment cannot be presumed. The burden of proving abandonment and bringing himself within the terms of the above-quoted statute is on the Defendant . . ."

It is our conclusion that defendant has not proved abandonment. True, petitioner was absent from her mother's home (where defendant resided) a considerable number of times and for periods up to two or three years, but proof is lacking that petitioner was absent for ten years. An effort was made by defendant and his 92 year old grandmother to show that petitioner made no payments in support of defendant. This was bitterly denied by petitioner, but even if we were to rely on defendant's proof that no payments were made toward the support of defendant, defendant has not proved that his mother gave him up absolutely with the intent of never again claiming her right to him. Using the language in the Stoudt case, no "positive intention to abandon" has been shown. The grandmother's testimony failed in its purpose and on the contrary indicated that she did not want support from petitioner for defendant and further that she considered defendant to be "her boy" and would not give him up to petitioner had she so desired. The love of this 92 year old grandmother for her grandson born out of wedlock was commendable and heart-warming, but her expression of affection had the opposite effect of what was intended by her testimony. She said, "I wouldn't give him to her. I kept him." When asked whether petitioner ever had anything to do with defendant's bringing up she responded, "I didn't give her the chance, no sir. He is my boy." Obviously, petitioner had

the right to attempt to secure the custody of defendant if she so desired, but the grandmother's attitude of keeping defendant to herself negatives any act of abandonment by petitioner. It may be that petitioner might have been a better mother to defendant, but something more is required to show abandonment than a lack of affection or mere neglect. It is our judgment that the defense of abandonment has not been proved.

The second question presents more difficulty than the first. The financial ability of defendant to "care for and maintain, or financially assist, such indigent person" is the problem. To determine the financial ability of defendant we must rely on his testimony. Defendant operates a bus company which apparently is not too successful. He testified that his assets are encumbered and the remainder of defendant's proof of financial ability comes from his 1960 income tax return. This return reflects a loss of $3,142.45 and a credit of $12,000 in the form of depreciation. Defendant acknowledged that he supported himself and a 22 year old son out of the earnings of the bus company. It is clear that we need not accept the 1960 tax return as the sole evidence of defendant's financial ability. The figure of $12,000 taken for depreciation is a deduction allowed for income tax purposes and has the effect of reducing profits. But the deduction taken is not necessarily a reserve fund in cash; it may be simply a deduction. We are therefore not bound by the deductions taken on a tax return though they may be considered with other evidence to determine defendant's earnings. See Commonwealth ex rel. Baylinson v. Baylinson, 191 Pa. Superior Ct. 51, 155 A. 2d 203.

As stated in Commonwealth ex rel. Goldman v. Goldman, 180 Pa. Superior Ct. 337, 119 A. 2d 631: "Generally, the test for financial ability includes a consideration of the actual income, the property, assets and earning ability, as well as other attendant circum-

stances." When we consider the combined factors of a reduction of income tax by a liberal deduction in the form of depreciation, the support of defendant and an adult son out of business earnings and defendant's earning ability, we are of the opinion that he has the financial ability to "assist" petitioner in a reasonable sum. It will be noted in the Support Act that provision is made to "financially assist" the indigent person if defendant is of sufficient financial ability. To "assist" is in contrast to "care for and maintain" the indigent person.

### Conclusions of Law

1. Petitioner, Beatrice A. Maceroyal, is an indigent person.

2. Petitioner, Beatrice A. Maceroyal, did not abandon Earl Cunningham, defendant, for a period of ten years during his minority.

3. Earl Cunningham, defendant, has the financial ability to assist in the support of petitioner, Beatrice A. Maceroyal, in the sum of $7.50 per week.

### Order

Now, May 15, 1962, defendant, Earl Cunningham, is ordered to pay to the Probation Office of Lehigh County the sum of $7.50 per week, for and toward the support of petitioner, Beatrice A. Maceroyal, pay the costs of this proceeding and enter into his own recognizance in the sum of $750.